UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JESSICA FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-01802-SEB-TAB |
| | ) | |
| NATIONAL CREDIT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ASSESSMENT OF ATTORNEY FEES AND COSTS**

Now before the Court is Plaintiff Jessica Franklin's request for an order awarding attorneys' fees and a reimbursement of costs [Dkt. 34] incurred by her in securing an offer of judgment from Defendant National Credit Systems, Inc. ("National Credit") in the above-captioned cause. Specifically, Ms. Franklin seeks $19,117.50 in attorney fees and $454.00 in costs, for a total award of $19,571.50.[1] For the reasons detailed below, we GRANT IN PART Ms. Franklin's request.

**Factual Background**

This is the second of two nearly identical lawsuits filed in this court by Ms. Franklin against National Credit, alleging that National Credit's failure to report the debt at issue as "disputed" in its submissions to consumer reporting agencies is violative of the Federal Debt Collection Practices Act ("FDCPA"). The prior case, *Jessica Franklin v.*

---

[1] Plaintiff originally requested $19,440.00 in attorney fees and $454.00 in costs, for a total award of $19,894.00, but in her reply in support of her motion withdrew certain time entries from her request, which will be described in more detail below.

1

*National Credit Systems, Inc.*, Case No. 1:23-cv-00515-RLY-MJD (S.D. Ind. 2023), was filed on March 23, 2023, and ultimately settled outside of court. The parties filed their notice of settlement on April 27, 2023, and the case was closed on the Court's docket on June 7, 2023. The settlement released all claims for costs and attorney fees through and including May 1, 2023.

Sometime after that first case was resolved, Ms. Franklin checked her credit report and discovered that National Credit again had failed to show the debt as disputed. Shortly thereafter, on October 6, 2023, Ms. Franklin filed the instant lawsuit alleging, as she had in the first lawsuit, that National Credit had violated the FDCPA by failing to report the debt as disputed.[2] The complaint filed in this lawsuit is nearly identical to the one filed in the first lawsuit, save for the addition of one paragraph and a few other insubstantial changes. Other than an updated credit report attached to the instant complaint, the exhibits attached are otherwise the same as those attached to the first complaint.

In a November 7, 2023 email to Ms. Franklin's counsel, defense counsel offered to settle this second lawsuit for $2,500.00. Ms. Franklin rejected that offer, and on November 15, 2023, National Credit answered the complaint and included 16 affirmative defenses. In response, Ms. Franklin filed a 17-page motion to strike National Credit's

---

[2] National Credit asserts that the parties' settlement agreement resolving the first lawsuit contained a provision whereby National Credit could cure any default on those settlement terms, but rather than notifying National Credit of the default as provided by the settlement agreement, Ms. Franklin instead filed the second lawsuit. Ms. Franklin disputes this interpretation of the settlement agreement.

affirmative defenses, arguing that most, if not all, should be stricken and dismissed with prejudice because they were without a factual basis. National Credit responded with a 13-page brief in opposition, to which Ms. Franklin submitted a 5-page reply. On January 16, 2024, the Court granted in part the motion to strike, acknowledging the "numerous … problems" with National Credit's affirmative defenses, but also expressing frustration that Plaintiff's counsel had made no attempt to confer with National Credit in an effort to resolve the issue before filing a motion to strike. Ultimately, National Credit's affirmative defenses were stricken without prejudice and National Credit was provided leave to file an amended answer, which it did on January 30, 2024.

Two days later, on February 1, 2024, National Credit made an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 in the amount of $2,500.00, including attorney fees and costs, which offer was (again) rejected by Ms. Franklin. Over the ensuing few months, the parties engaged in several "meet and confer" discussions regarding discovery issues, which disputes are characterized by each side as gamesmanship on the part of the other. On May 20, 2024, National Credit served on Ms. Franklin another Rule 68 Offer of Judgment, this time in the amount of $1,100.00, plus costs and fees incurred through that date. The next day, on May 21, 2024, Ms. Franklin provided the Court notice of her acceptance of the Offer of Judgment.

On June 7, 2024, Ms. Franklin filed the instant motion for assessment of attorney fees and costs. National Credit objects to Ms. Franklin's requested amount of fees because her fee application includes: (1) time entries incurred after the date National Credit made its Offer of Judgment, to wit, May 20, 2024, which are impermissible under

3

the clear terms of the Offer; (2) several duplicative entries; (3) entries that are vague and lack specificity; (4) non-billable entries for file maintenance and "filing" documents; (5) unreasonable time spent on recycled and templated discovery and pleadings; (6) billing for research on matters which should not require research; and (7) entries where the time spent does not support the work product produced.  National Credit argues that Plaintiff's attorney fees should be further reduced based on the prior settlement offer that she rejected.  In sum, National Credit argues that Plaintiff's counsel has claimed hours that are unreasonable and excessive in comparison to the ordinary result obtained in such an action as this and should therefore be reduced by the Court.

## Legal Analysis

### I.  Costs and Attorney Fees Under the FDCPA

A prevailing plaintiff is entitled under the FDCPA to recover the costs of the action and "a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  Courts typically apply the lodestar method to compute the amount of a reasonable attorney fee, which is done by multiplying the attorney's reasonable hourly rate by the number of hours reasonably spent on the case.  *Schlacher v. Law Offs. Of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009).  The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed.  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (citation omitted).  Once the lodestar figure is calculated, it is presumed reasonable, but the Court may in its discretion adjust the amount "to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public

4

interest advanced by the litigation." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 682 (7th Cir. 2022) (quotation marks and citation omitted).

## II.   Discussion

It is undisputed that, by accepting the Offer of Judgment, Plaintiff is the prevailing party and is therefore entitled to receive costs and reasonable attorney fees. Plaintiff seeks a total of $19,117.50 in attorney fees, which is comprised of 7.9 hours of paralegal time at $125.00 per hour and 51.8 hours of attorney time at $350.00 per hour,[3] and costs in the amount of $454.00, for a total award of $19,571.50. We will begin with a determination of a reasonable attorney fee and then address any reasonable costs to which Plaintiff is entitled.

### A.   Reasonable Attorney Fees

#### 1.   Reasonableness of Hourly Rate

Defendant does not object to the hourly rates requested by Plaintiff, and, based on the evidence before us, we find that the requested rates are reasonable and commensurate with Plaintiff's counsel's skill and experience as well as comparable to rates charged by other firms for this type of work. Accordingly, we hold that the market rate of $350 per

---

[3] As referenced above, Plaintiff originally requested $19,440.00 in attorney fees but subsequently withdrew: (1) the time entries regarding the protective order on 1/23/24 and 1/26/24 (0.4 attorney hours and 0.6 paralegal hours); and (2) the time entry for drafting the Initial Disclosures on 2/12/2024 (0.2 attorney hours and 0.3 paralegal hours), as all were double billed. Accordingly, we have deducted 0.6 attorney hours (0.6 hours x $350.00 per hour = $210.00) and 0.8 paralegal hours (0.9 hours x $125.00 per hour = $112.50) from Plaintiff's request to reflect these withdrawals.

hour for Plaintiff's counsel in this case and $125 per hour for the paralegal who assisted in this matter are reasonable and applicable here.

### 2. Reasonableness of Hours Expended

Having determined the reasonable hourly rates in this matter, we turn next to analyze and determine the number of hours "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Defendant contends that the number of hours billed—51.8 hours of attorney time and 7.9 hours of paralegal time—is excessive, particularly given that much of the work undertaken in this lawsuit is duplicative of that performed in conducting the first lawsuit. Defendant urges us to reduce the number of recoverable hours for time entries that are (1) vague or insufficiently documented; (2) excessive, redundant, or unnecessary; (3) clerical tasks; and (4) billed after May 20, 2024, the date when Defendant made its Offer of Judgment. Defendant argues that the final attorney fee award should be further reduced in consideration of its early offer to settle the matter for $2,500.00, before Plaintiff's fees and costs ballooned up.

Plaintiff rejoins that, because the settlement offer from Defendant was not substantial, it should not be considered in our analysis. Plaintiff further asserts that it was gamesmanship on the part of Defendant that ratcheted up the financial stakes of the litigation, and that, as a result, her counsel's expenditures were reasonably incurred and necessary to finally resolve the matter. Plaintiff points to the fact that she has provided the Court with sworn affidavits and declarations from two experienced attorneys who practice consumer law and are familiar with the Indianapolis legal market who have reviewed Plaintiff's counsel's time records, the docket, and relevant pleadings in this case

and testified that Plaintiff's counsel was efficient with his time, while Defendant has submitted no evidence to the contrary.

Our review of Plaintiff's attorney fee request raises significant concerns, not only as to the overall amount of fees, but also as to the specific litigation tasks engaged in by counsel to achieve the ultimately successful Offer of Judgment. The docket reflects that this litigation can fairly be described as an uncomplicated FDCPA case, made even more straightforward by the fact that this is the "same song, second verse" between these parties, given their previous settlement of an essentially identical lawsuit a mere four months prior to the commencement of this action. Nothing about Plaintiff's claim and theory of liability is novel or complex such that significant investments of attorney time and effort were warranted to justify the large fees requested here. In fact, given the parties' prior interactions and familiarity with the issues, they likely should have been able to resolve this dispute without even filing a second lawsuit.

Based on the tenor of the parties' rhetoric,[4] it appears, as the Magistrate Judge observed in his order granting in part Plaintiff's motion to strike Defendant's affirmative

---

[4] We pause to address further the unworthy and distracting tone and style of the parties' briefing. The briefs are replete with snide comments, rhetorical questions, and petty asides, none of which aid the Court in its consideration of the matters at hand. Additionally, Plaintiff's repeated references to Defendant's "scorched earth" litigation tactics are not helpful in strengthening her legal arguments. We recently used this term in addressing an attorney fee request from different counsel in a wholly unrelated trade secrets misappropriation case to describe the litigation strategy employed there, which matter spanned several years, included several hundred docket entries, an attorney fee request of nearly $2.5 million, and spawned more than a dozen related actions. Plaintiff's exaggerated use of the phrase to characterize the circumstances here—a garden-variety FDCPA case with 38 docket entries that was resolved through an offer of judgment of statutory damages within seven months without the filing of any dispositive motions—is hyperbolic. We admonish the parties to be mindful in future filings that such editorializing and posturing is counterproductive and distracting.

defenses, that there may be some "bad blood" between the parties that contributed to the tit-for-tat litigation tactics reflected in the parties' motions practice and discovery disputes, which clearly contributed to the escalation of fees far beyond the merits of the case. Regardless of the cause, however, we find that the hourly expenditures requested by Plaintiff do not reflect the difficulty, stakes, or outcome of this litigation and therefore must be reduced. We turn now to address in turn the parties' specific arguments.

### a. Excessive, Redundant, or Unnecessary

Defendant argues that Plaintiff's counsel's time records reveal a pattern of billing excessive amounts of time for tasks that are essentially identical to the work performed in previous lawsuits, particularly the First Lawsuit, the fees for which, because they were resolved by way of settlement agreement, cannot be rolled into the Second Lawsuit. For example, Defendant contends that the time billed for researching Defendant's license in Indiana (0.2 hours of paralegal time), drafting, reviewing, and modifying the complaint and accompanying documents and exhibits (1.9 hours of paralegal time and 0.6 hours of attorney time), drafting the demand letter (0.4 hours attorney time), reviewing the parties' settlement agreement in the First Lawsuit (0.4 hours attorney time), drafting discovery (2.1 hours attorney time), and reviewing, researching, and updating client on discovery responses (6.2 hours attorney time) was excessive, given that it pertains to work that was essentially recycled from the First Lawsuit as well as in *Tolliver v. National Credit Systems, Inc.*, No. 3:20-cv-728 (W.D. Wis. 2020), a similar FDCPA case litigated between Plaintiff's and Defendant's counsel.

Defendant also contends that the 16.9 hours Plaintiff's counsel spent researching affirmative defenses and motions to strike, drafting and filing the motion to strike Defendant's affirmative defenses, reviewing Defendant's response to that motion, and drafting and filing Plaintiff's reply was excessive, particularly given Plaintiff's counsel's experience in consumer debt litigation. In further support of its claim that these time expenditures were unreasonable, Defendant cites the Magistrate Judge's comment in his order granting in part Plaintiff's motion to strike that Plaintiff's concerns pertaining to Defendant's affirmative defenses likely could have been resolved quickly and cheaply had Plaintiff's counsel simply had a conversation with opposing counsel before filing the motion.

Defendant also cites instances in which Plaintiff's counsel billed for both telephone conversations and written correspondence with his client for what appears to be the same matters. In addition to arguing that telephoning and then following up in writing with Plaintiff was an unreasonably redundancy, Defendant further notes that each of the nine letters sent by Plaintiff's counsel to his client was billed at 0.4 hours, questioning the accuracy of these entries, given that there is no evidence that Plaintiff's counsel maintained contemporaneous time records.

The defense also takes issue with Plaintiff's counsel's billing for time spent (0.3 hours) drafting and emailing to defense counsel a set of stipulated facts following a telephone call during which defense counsel had informed Plaintiff's counsel that Defendant would not agree to stipulate to those facts. Accordingly, Defendant argues that

9

such time expenditures were clearly unnecessary and unreasonable and should be reduced.

In response to Defendant's arguments, Plaintiff rejoins with a general observation, saying that counsel is required by the Federal Rules of Civil Procedure to investigate and research every case and review every pleading before filing it. Although Plaintiff's counsel concedes that he utilized already-existing forms for certain filings, he maintains that he was still required to carefully review and modify those forms to address the particular issues raised in this case, which process took time. In support, he references this Court's observation in another case that "[w]hile boilerplate documents provide an efficient starting point, the attorneys must still tailor the documents to the particular case and that takes time." *Reynolds v. EOS CCA*, No. 1:14-cv-01868-JMS-DML, 2016 WL 6876575, at *5 (S.D. Ind. Nov. 22, 2016).

With regard to the time spent on the motion to strike Defendant's affirmative defenses, Plaintiff explains that the motion was "well-researched as it should have been" and because it was ultimately successful, the time expended was justifiable. Dkt. 38 at 12. As for communications with his client, Plaintiff's counsel notes that the Indiana Rules of Professional Conduct require that counsel keep clients updated on developments in the case and that therefore it is his practice to send a letter to clients after every major event in the case, as reflected in his time entries. Regarding the time spent specifically in drafting stipulated facts, Plaintiff's counsel contends that he was attempting to streamline discovery, and it was Defendant's refusal to stipulate that led to additional time outlays

10

and expense in conducting discovery due to Defendant's "fight tooth and nail strategy" in waging these battles.

Our careful review of Plaintiff's counsel's time records brings us to a position of agreement with Defendant's contention that certain entries reflect excessive amounts of time expended on various tasks, in particular, in drafting and reviewing documents very similar to those used the First Lawsuit, and, even more clearly, the time and resources expended on the motion to strike Defendant's affirmative defenses. While it is accurate that the Magistrate Judge recognized "numerous … problems" with Defendant's affirmative defenses in granting in part Plaintiff's motion to strike, he also expressed a level of dismay regarding Plaintiff's requiring seventeen pages to explain why Defendant's affirmative defenses should be stricken, (Dkt. 15 at 1), when the issues likely could have been resolved had Plaintiff's counsel first had "a simple conversation with opposing counsel," (*id.* at 3), prompting him to advise counsel in the future to "confer in earnest before filing and briefing distracting and disfavored motions." *Id.*

Based on these factors, Plaintiff's counsel's hours assigned to the tasks that were described by Defendant as excessive, unnecessary, and/or redundant deserve to be reduced by some reasonable amount, which we explain further below.

### b. Clerical Tasks

Defendant challenges all the time entries for preparing documents for filing, for filing documents with the Court, for pulling Plaintiff's credit reports, for conferring with court staff regarding scheduling issues, for placing court dates on the calendar, and for communications with the process server as well as receiving, reviewing, drafting, and

filing a return of service because they are obviously non-compensable clerical tasks. Plaintiff defends these allocations arguing that the filing of documents with the Court, pulling of credit reports, and drafting and reviewing a return of service are tasks properly assignable to a paralegal as they require a higher level of clerical knowledge and training and/or because they involve sensitive and confidential information and are compensable on that basis.

It is well-settled within the Seventh Circuit that courts "should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553 (citation and quotation marks omitted). "The relevant inquiry for requested paralegal fees is whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *Id.*

Defendant's objection is in our view largely well-taken. Courts in the Seventh Circuit have ruled that tasks such as preparing documents for filing, conferring with court staff on scheduling, adding dates to the calendar, communicating with process servers, filing documents with the court, and reviewing waivers of service and other similar documents are clerical tasks that should be excluded from fee reimbursements. *See, e.g.*, *Howard v. Credit Collection Servs., Inc.*, No. 4:23-cv-04099-SLD-JEH, 2024 WL 4136392, at *3 (C.D. Ill. Sept. 9, 2024) ("[C]lerical tasks include: sending pleadings to clients, review of waivers of service and other similar documents, drafting cover sheets, photocopying, and filing documents with the court.") (collecting cases); *Thomas v.*

*Shoshone Trucking, LLC*, No. 4:20-cv-00209-TWP-KMB, 2023 WL 2649490, at *10 (S.D. Ind. Mar. 27, 2023) (observing that "filing documents, conferring with court staff regarding scheduling issues, and preparing short form notices" are all administrative tasks); *Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 886 (C.D. Ill. 2013) (finding that "calls made to hire process servers" and "updating calendar deadlines" are clerical and should be excluded). A percentage reduction is thus warranted to account for the disallowance of time spent on clerical tasks.

### c. Vagueness and 0.1 Billing Practice

Defendant also objects to what it calls Plaintiff's counsel's attempt to "inflict 'death by a thousand .1s.'" Dkt. 36 at 7. Our review reveals that Plaintiff's counsel's time records include more than 40 separate entries for tasks billed at .01 hour, primarily covering things like individual emails and time spent "receiving" documents. Courts in our circuit recognize that this type of timekeeping can often cause bills to become excessive. *See Pouncy v. City of Chicago* No. 15-cv-1840, 2017 WL 8205488, at *10 (N.D. Ill. Dec. 11, 2017) (reducing by two-thirds fees billed 0.1 hour increments for email review); *Taylor v. Law Offices of Vincent Peter Cignarale,* No. 11-cv-4853, *LLC*, 2011 WL 6102020, at *2 (N.D. Ill. Dec. 5, 2011) (same).

Additionally, a high number of the generalized, often vague 0.1 time entries on Plaintiff's counsel's time sheets creates an obstacle to the Court's ability to determine whether they are reasonable; consider, for example, the four entries labeled only "E-mail from In-House Counsel" and "E-mail from Opposing Counsel," with no further description, and several other time entries for "receiving" documents. *Cf. Montanez v.*

13

*Simon*, 755 F.3d 547, 555–56 (7th Cir. 2014) ("The [district court] judge also deducted some hours because they wee improperly or inadequately recorded. For example, the court rejected time billed for vaguely described telephone calls; hours billed as 'call to client' without more, were disallowed."). Because it is impossible to know the nature of these emails from such an entry or what "receiving" documents entails, we cannot determine whether such time expenditures were reasonable. Accordingly, a reasonable percentage reduction is also warranted here to account for these unexplained and unrevealing entries.

### d. Time Entries for Work Occurring After Service of the Offer of Judgment

Defendant also maintains that all the time entries for work performed subsequent to May 20, 2024, the date of service of its Offer of Judgment, should be excluded in accordance with the plain and unambiguous language of the tendered document, which provides that Defendant would pay "reasonable attorney's fees and costs incurred by Plaintiff … through the date of service of this offer of judgment." Dkt. 30-1. Where, as here, "an offer of judgment unambiguously limits recovery of attorney's fees, courts should honor that limitation." *Stephens v. Cirrincione*, No. 11 C 6354, 2012 WL 2872448, at *3 (N.D. Ill. July 11, 2012). Accordingly, an additional reduction is warranted on this basis.

### e. Settlement Offer

A district court is also directed to consider a substantial settlement offer as a factor in determining whether a fee award is reasonable. *Moriarty v. Svec*, 233 F.3d 955, 967

14

(7th Cir. 2000). Fees "accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation." *Id*. (citing *Marek v. Chesny*, 473 U.S. 1, 11 (1985)). An offer is "substantial" if "the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Moriarty*, 233 F.3d at 967. In such cases, a district court "should reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer." *Id.*

Defendant seeks to have Plaintiff's attorney fees request reduced based on Plaintiff's rejection of Defendant's November 7, 2023 offer to settle the case for $2,500.00, which offer preceded the necessity of an answer being filed. Plaintiff rejected that offer the next day, on November 8, 2023, though ultimately on May 21, 2024, she accepted Defendant's offer of judgment for $1,100.00 plus reasonable attorney fees and costs. Had Plaintiff accepted Defendant's November 7 settlement offer, after deducting $1,100 for statutory damages, there would have been $1,400.00 remaining to cover attorney fees and expenses.

Based on Plaintiff's counsel's time records, at the time the settlement offer was made, Plaintiff's claimed fees and expenses were $1,791.50, only $391.50 more than the proffered settlement amount. Plaintiff argues that Defendant's offer was therefore "not substantial" because it was "significantly less" than the statutory award, plus fees and costs at that point in the litigation. Plaintiff contends that Defendant should instead have

15

made an Offer of Judgment of $1,100.00, plus reasonable attorney fees and costs, at the beginning of the case.

We disagree with Plaintiff's description of Defendant's $2,500.00 settlement offer as not a substantial offer. Given that Plaintiff ultimately accepted an Offer of Judgment for $1,100.00, plus reasonable attorney fees and costs, Defendant's offer of $2,500.00, an amount that would cover Plaintiff's statutory damages and still allow $1,400.00 for attorney fees and costs, is roughly equal to the statutory award Plaintiff ended up accepting, plus reasonable attorney fees and costs, at that early stage of the litigation. Considering the timing of the offer, to wit, approximately one month after the case was filed, the straightforward nature of Plaintiff's claim, and the fact that the parties had within only a few months prior settled a nearly identical lawsuit, we have no trouble concluding that $2,500.00 under these circumstances was a substantial settlement offer. In fact, to argue otherwise strikes us as disingenuous on the part of Plaintiff's counsel.

Given that Defendant's settlement offer came at such an early point in the litigation, when, had it been accepted, the parties would have been spared more than six months of litigating, during which time Plaintiff's potential damages apparently never increased, only the amount of attorney fees, we hold that Plaintiff is entitled to a partial reduction in the amount of attorney fees generated after November 7, 2023, the date of the settlement offer.

### f. Additional Considerations and Reasonable Percentage Reduction

It is well-established that courts "need not, and indeed should not, become green-eyeshade accounts" in deciding issues regarding attorney fees. *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* As explained above, we conclude that a significant percentage reduction in the amount of Plaintiff's attorney fees is warranted here. Given the straightforward nature of the case and the parties' nearly identical lawsuit which was resolved by settlement a few months prior and given the experience level of counsel on both sides, particularly considering their familiarity with each other and the issues presented and the lack of complexity as well as the relatively modest damages involved, downward adjustments in the fees amount are called for.

In making these adjustments, no precise formula applies. Thus, we shall award Plaintiff the full amount of her attorney fees through November 7, 2023. Having declined Defendant's substantial settlement offer on November 8, 2023, and in light of the billing excesses discussed in detail above, we reduce by 70% the amount of the attorney fees Plaintiff incurred after that date. Accordingly, Plaintiff shall be awarded $1,791.50 (pre-offer fees), plus $5,735.25 (30% of her post-offer fees), for a total of $7,526.75. This amount appropriately reflects the difficulty, stakes, and outcome of this litigation, as well as the fact that by declining a substantial settlement offer that would

17

have settled the case, she substantially contributed to the need for an additional six months of her attorney's and paralegal's work.

### B.  Costs

Plaintiff seeks reimbursement of $454.00 in costs, which includes $402.00 for the filing fee, $42.00 in "postage, copies, Westlaw fees for Legal Research, etc.," and $10.00 for a "service fee."  Defendant challenges this request on the grounds that it is not clear what the "service fee" is, and further, that amounts for postage and copies are overhead costs not properly chargeable to Defendant.  Defendant cites no case law in support of that contention, however.  In Plaintiff's reply, she clarified that the "service fee" refers to costs for perfecting service and argues that Defendant has the burden of affirmatively showing that costs are not appropriate, which Defendant has failed to do by failing to produce any sworn evidence in support.

We agree with Plaintiff that Defendant has not affirmatively demonstrated that Plaintiff's costs are inappropriate or unreasonable.  Accordingly, Plaintiff shall be awarded $454.00 in costs.

### III.  Conclusion

For the reasons detailed above, Plaintiff's Motion for Attorney Fees and Costs [Dkt. 34] is GRANTED IN PART.  Accordingly, Plaintiff is awarded $7,526.75 in

attorney fees and $454.00 in costs for a total award of $7,980.75, payable forthwith by Defendant.

  IT IS SO ORDERED.

Date: _____3/31/2025_____     _Sarah Evans Barker_
                   SARAH EVANS BARKER, JUDGE
                   United States District Court
                   Southern District of Indiana

Distribution:

Katrina M. DeMarte
DeMarte Law, PLLC
katrina@demartelaw.com

John Thomas Steinkamp
JOHN STEINKAMP & ASSOCIATES
John@johnsteinkampandassociates.com